**Federal Defenders**
OF NEW YORK, INC.

One Pierrepont Plaza-16th Floor, Brooklyn, NY 11201
Tel: (718) 330-1200 Fax: (718) 855-0760

David E. Patton
*Executive Director and
Attorney-in-Chief*

Deirdre D. von Dornum
*Attorney-in-Charge*

November 21, 2022

**By ECF**

The Honorable Edward R. Korman
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

RE:   *United States v. Thomas Weston*, 21 CR 293 (ERK)

Dear Judge Korman:

      Thomas Weston pleaded guilty to possession of a firearm and ammunition as a felon. On March 4, 2021, Mr. Weston was arrested by NYPD officers and found to be in possession of several spent shell casings. During a search of a nearby apartment building, officers recovered a pistol. Forensic testing found Mr. Weston's DNA on the pistol.

      Mr. Weston disagrees that the guideline range found in the presentence investigation report ("PSR"). Because attempted robbery in the second degree is not a crime of violence as defined by USSG § 4B1.2, the base offense level in this case is 14 and the final offense level is 12. The recommended range of imprisonment is 27 to 33 months in criminal history category V. Considering Mr. Weston's history and characteristics, the nature of the offense, and the conditions of his presentence confinement, a sentence of 27 months is appropriate in this case.

      Mr. Weston specifically objects to PSR ¶¶ 15, 20, *and* 24. Mr. Weston's 2013 conviction and sentence for attempted robbery in the second degree (*see* PSR ¶ 28) does not qualify as a "crime of violence" under the definition found at USSG § 4B1.2. Thus, Mr. Weston's base offense level is 14, not 20.

**I.  Mr. Weston's New York state conviction for attempted robbery in the first degree is not a "crime of violence" under USSG § 4B1.2.**

Mr. Weston's conviction in a New York court for attempted robbery in the second degree is not a "crime of violence" under USSG §4B1.2 because: 1) New York attempted robbery is not a "crime of violence" under §4B1.2's elements clause pursuant to the Supreme Court's decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022); 2) New York state robberies are not "crimes of violence" under §4B1.2's enumerated clause; and 3) Application Note 1 of the commentary of §4B1.2 is inconsistent with §4B1.2 and thus inoperative.

**A.  Attempted robbery in the second degree is not a "crime of violence" as defined in USSG §4B1.2.**

Under §4B1.2, a "crime of violence" is defined as any federal or state offense, punishable by imprisonment for a term exceeding one year, that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5485(a) or explosive material as defined in 18 U.S.C. § 841(c).

USSG §4B1.2(a).

The first paragraph, which addresses the "force" part of the definition is commonly called the "elements clause" and the second paragraph is commonly called the "enumerated offenses clause." *See Nunez v. United States*, 954 F.3d 465, 468 (2d Cir. 2020). Attempted New York robbery in the second degree is not a "crime of violence" under either the elements clause or the enumerated offenses clause.

**i.  Pursuant to the holding in *Taylor*, attempted robbery in the third degree is not a "crime of violence" under the elements Clause.**

The decision in *Taylor* determined that attempted Hobbs Act robbery does not have as an element the use, attempted use, or threatened use of physical force.

*Taylor*, 142 S. Ct. at 2020. That court explained its reasoning by use of a hypothetical:

> Adam tells a friend that he is planning to rob a particular store [and] . . . drafts a note –"Your money or your life" – that he plans to pass to the cashier. The note is a bluff, but Adam hopes its implication that he is armed and dangerous will elicit a compliant response. When the day finally comes and Adam crosses the threshold into the store, the police immediately arrest him. It turns out Adam's friend tipped them off.
>
> There is little question the government could win a lawful conviction against Adam for attempted Hobbs Act robbery. After all, he intended to take property against the cashier's will by threat of force, and his actions constituted a substantial step toward that goal. At the same time, this example helps show why attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause. Adam did not "use" physical force. He did not "attempt" to use such force— his note was a bluff and never delivered. And he never even got to the point of threatening the use of force against anyone or anything. He may have intended and attempted to do just that, but he failed. Simply put, no element of attempted Hobbs Act robbery requires proof that the defendant used, attempted to use, or threatened to use force.

*Id.* at 2021.

The same reasoning applies to attempted robbery under New York law. "A person is guilty of an attempt" under New York law "when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. PENAL § 160.00. Intent is merely a mental state entailing no "use, attempted use, or threatened use of physical force." USSG § 4B1.2(a)(1). And though the "conduct which tends to effect the commission of" a robbery must come "very near to the accomplishment of the intended crime," it need not entail any actual, attempted or threatened force. *People v. Mahboubian*, 74 N.Y.2d 174, 190 (1989) (citation omitted).

For example, in *People v. Lamont*, 25 N.Y.3d 315 (2015), "at approximately 6:30 A.M., before the morning business hours, defendant and an accomplice appeared armed and masked at the rear door of a Wendy's fast-food establishment. The two lone employees who were preparing to open heard loud knocking, and one of them checked the security camera and saw defendant and his accomplice outside the back, knocking on the door. The employee did not let the two men in, but

instead called his supervisor and 911." *Id*. at 317. Police arrested the defendant outside the Wendy's and recovered what had "appeared" on the security camera to be "handgun[s]"— they were only "BB guns." *Id*. at 317. The court affirmed the defendant's conviction for attempted robbery, rejecting his claim that he could have intended to commit murder instead of robbery: the "BB gun supports an inference of intent to forcibly steal rather than an intent to commit murder." *Id*. at 321. In other words, his plan was to use the BB gun to scare the employees into handing over money. It didn't matter that he never got that chance to trick them: he "showed up masked and armed, carrying a backpack, seeking entry at 6:30 A.M. through a locked rear door not used by the public, with an escape vehicle conveniently parked nearby. This fit the pattern common to an early morning robbery." *Id*. at 322. As with the hypothetical "Adam" described in *Taylor*, he "did not 'use' physical force. He did not 'attempt' to use such force— his [plan to point a BB gun] was a bluff and never [realized]. And he never even got to the point of threatening the use of force against anyone." *Taylor*, 142 S. Ct. at 2021. He was guilty of attempted robbery all the same.

Likewise, in *People v. Placido*, 51 N.Y.S.3d 226 (App. Div. 2017), the defendant and others "devise[d] a plan to rob [] drug dealers of their heroin," but after the drug dealers grew suspicious of the defendant he lost his nerve: he "removed [a] firearm from his waistband, took out its clip, placed the firearm on the floor and informed the drug dealers that *he* did not want to get robbed. . . . Eventually, defendant left, taking the handgun, and stating that he needed to secure more funds and then would return to purchase the drugs. Defendant did not return." *Id*. at 229 (emphasis added). The court affirmed his conviction for attempted robbery, explaining that he had "the intention to rob the drug dealers as he entered the home and interacted with its occupants," and he "engaged in conduct that came dangerously near the commission of robbery." *Id*. at 230. It did not matter that he never used, attempted to use, or threatened to use force.

These cases confirm that, although attempted New York robbery requires conduct that comes "very near to the accomplishment of the intended crime," there need be no "use, attempted use, or threatened use of physical force." *Mahboubian*, 74 N.Y.2d at 190 (citation omitted); USSG § 4B1.2(a)(1). Thus, just as the Supreme Court determined in *Taylor* regarding attempted Hobbs Act robbery, the materially identical offense of attempted New York robbery does not fit the elements clause. The Second Circuit held otherwise in *United States v. Pereria-Gomez*, 903 F.3d 155 (2d Cir. 2018), but the Supreme Court's ruling in *Taylor* obviously controls.

> ii. **New York attempted robbery in the second degree is not a "crime of violence" under §4B1.2's enumerated offenses clause.**

In determining whether an offense falls under the enumerated offenses clause, the courts compare the elements of the offense to the "generic" definition of the offense. A conviction will only qualify as a "crime of violence" under the enumerated offenses clause if, "the statute's elements are the same as, or narrower than those of the generic offense." *Pereira-Gomez*, 903 F.3d at 161. In *Pereira-Gomez*, the Second Circuit compared the New York robbery statute to the "generic" definition of robbery and held that the New York robbery statute is broader than the "generic" definition of robbery. *Id*. at 164. Thus, under the Second Circuit's holding in *Pereria-Gomez*, Mr. Weston's conviction for attempted robbery in the second degree is not a "crime of violence" under the enumerated offenses clause of §4B1.2 of the Guidelines.

> **B. Application Note 1 of the Commentary to §4B1.2 is inconsistent with §4B1.2(a) and the court should disregard it.**

In other cases, the government has argued that New York attempted robbery is a "crime of violence" under Application Note 1 of the Commentary to §4B1.2. Application Note 1 states, in relevant part, that a "crime of violence," "includes the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." USSG § 4B1.2, comment. (n.1). This argument fails.

While, in the past, courts deferred to the Guideline commentary without much analysis, the Supreme Court's decision in *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), changed that. Under *Kisor*, a court may give Guideline commentary effect only when the Guideline text is "genuinely ambiguous" after exhausting all the traditional tools of construction, and only if the commentary falls within the "zone of ambiguity" identified in the text. *Id*. at 2415-16. The government has conceded that *Kisor* applies to the Guidelines commentary. Brief for the United States in Opposition at 15, *Tabb. v. United States*, No. 20–579 (U.S. Feb. 16, 2021) ("The government has accordingly taken the position, including in this case, that *Kisor* sets forth the authoritative standards for determining whether particular commentary is entitled to deference." (internal quotation marks omitted)) ("*Tabb* BIO"), available at https://bit.ly/3b60HmX. *See also*, *e.g.*, *United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021); *United States v. Nasir*, 982 F.3d 144, 160 (3d Cir. 2020), *cert. denied*, 142 S. Ct. 275 (2021), *and cert. granted, judgment vacated*, 142 S. Ct. 56 (2021).

Considering *Kisor*, where the text of a guideline is unambiguous, this Court must limit its analysis to that text,. For the reasons stated above, attempted New York robbery is not a "crime of violence" under the elements clause or the enumerated offenses clause of §4B1.2. Thus, for this Court to find that attempted New York robbery is a "crime of violence" under Application Note 1, the Court would have to find that the commentary *expands* the definition of a "crime of violence" rather than simply interprets it. That is exactly what the Supreme Court in *Kisor* said is not permissible. This Court should disregard the commentary because the text itself is not ambiguous, and Application Note 1 is inconsistent with the guideline it purports to interpret. *See e.g. United States v. Chappelle*, 2020 WL 5441541, *2 (S.D.N.Y. September 9, 2020) (holding, in part, that Application Note 1 of §4B1.2 is inconsistent with §4B1.2 and does not control a court's guideline determination because it "goes beyond interpretation of the guideline text to expand the definition of 'crime of violence; to include separate, distinct inchoate offenses that are not otherwise within the guideline's definition of 'crime of violence.'")

## II.     Guideline calculation

Probation determined that Mr. Weston's base offense level is 20, pursuant to USSG §2K2.1(a)(4)(A). By deducting three points for acceptance of responsibility under USSG §3E1.1(a) and (b), probation found the total offense level to be 17. (PSR ¶¶ 15, 20, 22-24). Probation correctly calculated that Mr. Weston is in criminal history category V. (PSR ¶ 31). Based on a total offense level of 17 and a criminal history category of IV, probation determined the guideline range to be 46 to 57 months. (PSR ¶ 61).

As noted above, pursuant to the reasoning of *Taylor*, attempted New York robbery is not a "crime of violence" under §4B1.2, and therefore Mr. Weston's correct base offense level is 14 according to §2K2.1(a)(6), with a total offense level of 12 after deducting two points for acceptance of responsibility pursuant to §3E1.1(a). Mr. Weston's recommended guideline range is 27 to 33 months of imprisonment based on a total offense level of 12 and criminal history category V.

## III.     <u>18 U.S.C. § 3553(a)</u>

We ask the Court to consider the factors in 18 U.S.C. § 3553(a) to arrive at a fair and reasonable sentence. Section 3553(a) requires a sentence that is "sufficient, but not greater than necessary" to satisfy specific sentencing goals, including just punishment, deterrence of future criminal conduct, correctional treatment, and the prevention of unwarranted sentencing disparities. *See* § 3553(a)(2). In determining the appropriate sentence, the Court must weigh several factors, including Mr. Weston's personal history and characteristics, the unique nature and circumstances of the offense, and any mitigating factors that may exist. *See, e.g., United States v.*

*Hernandez*, 604 F.3d 48, 55 (2d Cir. 2010) (vacating sentence based on district court's failure to consider "mitigating evidence" under § 3553(a)).

The Supreme Court has repeatedly affirmed a federal judge's ability to grant a variance from the advisory guideline range based on the § 3553(a) factors. *See, e.g., Beckles v. United States*, 137 S. Ct. 886, 892 (2017). The Supreme Court has also made clear that granting a variance does not require a showing of extraordinary or special circumstances. To the contrary, "courts are entitled to vary from the . . . guidelines in a mine run case where there are no 'particular circumstances' that would otherwise justify a variance from the guidelines' sentencing range." *Spears v. United States*, 555 U.S. 261, 267 (2009) (internal quotation omitted). This case however does present significant and unique mitigating factors that argue a sentence below the advisory guideline range. Among them are Mr. Weston's traumatic background and the unusually harsh present and likely future conditions of confinement resulting from Bureau of Prison's ("BOP") response to the COVID-19 pandemic.

Obviously, illegal possession of a firearm is a serious offense. Mr. Weston, however, possessed the firearm solely for personal protection. In 2012, Mr. Weston's best friend was the target of a shooting. Mr. Weston was with his friend during the attack. Mr. Weston was seriously injured; his friend was killed. In 2019, Mr. Weston was again the victim of a shooting by an unknown assailant. These incidents have left Mr. Weston with Post Traumatic Stress Disorder and he has struggled with his mental health for a decade. This history does not excuse his possession of a firearm, but it explains the mindset that led him to carry a handgun.

Ever since he was injured and his friend was murdered 10 years ago, Mr. Weston hasn't felt at ease. He understands that his traumatic past has affected his mental health and that he needs help to move forward and he intends to seek that help in the future. Though he's a lifelong New Yorker, he and his mother both envision him moving to Florida upon his release from custody where he can stay with relatives and rebuild his life.

The severely punitive nature of Mr. Weston's pretrial detention also warrants a sentence below the guideline range. Mr. Weston was first arrested for the instant case by local authorities on March 4, 2021 and held at Rikers Island for 2 months. He was brought to federal custody on May 19, 2021 and has been incarcerated at the MDC since. Throughout the past eighteen months, the BOP has continued to impose "onerous lockdowns and restrictions" in an attempt to limit the spread of the virus within its facilities. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). During Mr. Weston's pretrial detention, the BOP imposed a nationwide lockdown restricting all movement, including legal visits, in response to an incident in a BOP facility in Texas.[1] Regardless of the rationale behind such

---

[1] https://www.nytimes.com/2022/01/31/us/politics/ms13-texas-prison-fight.html.

lockdowns and restrictions, it cannot be denied that the sentences of those incarcerated during this time are "harsher and more punitive than would otherwise have been the case." *Id. See also United States v. Hatcher*, 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021.); *United States v. Mcrae*, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021); and *United States v. Ciprian*, 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021.)

Acknowledging the increased punitive nature of confinement during COVID, some courts in the Eastern and Southern Districts of New York have found these harsh conditions to be an appropriate basis for a downward variance at sentence. *E.g.*, *United States v. Clark*, No. 20-cr-241 (NGG) (E.D.N.Y. May 7, 2021) (imposing 96 months in armed robbery case where bottom of guidelines range was 114 months); *United States v. Narcissi*, No. 20-cr-449 (RPK) (E.D.N.Y. Mar. 15, 2021) (imposing time-served sentence of 7 months, where guidelines range was 24-30 months); *United States v. Colon*, No. 15-cr-317 (MKB) (E.D.N.Y. Nov. 20, 2020) (imposing 18 months, consecutive to defendant's 18-month state sentence, where bottom of guidelines was 100 months); *United States v. Shi*, No. 19-cr-451 (PKC) (E.D.N.Y. Nov. 2, 2020) (imposing no prison where guidelines range was 12-18 months); *United States v. Piper*, No. 18-cr-008 (AMD) (E.D.N.Y. June 25, 2020) (imposing time-served sentence on resentencing where defendant had served approximately 24 months and bottom of guidelines range was 63 months). *See also, e.g.*, *United States v. Searles*, No. 19-cr-381 (GBD) (S.D.N.Y. Mar. 25, 2021) (imposing 48-month sentence in Hobbs Act robbery case where bottom of guidelines range was 120 months); *United States v. Soto*, No 19-cr-903 (KMW) (S.D.N.Y. Mar, 19, 2021) (imposing 60-month sentence where bottom of guidelines range was 120 months); *United States v. Marmolejo*, No. 20-cr-1 (JSR) (S.D.N.Y. Feb. 3, 2021) (imposing 18-month sentence where bottom of guidelines range was 87 months); *United States v. Almonte*, No. 19-cr-621 (RA) (S.D.N.Y. Jan. 14, 2021) (imposing 15-month sentence where bottom of guidelines range was 51 months); *United States v. Garcia*, No. 19-cr-593 (PAC) (S.D.N.Y. Dec. 3, 2020) (imposing 48-month sentence where bottom of guidelines range was 110 months); *United States v. Camacho*, No. 19-cr-389 (CM) (S.D.N.Y. Nov 19, 2020) (imposing time-served sentence where bottom of guidelines range was 57 months); *United States v. Paulino*, No. 19-cr-607 (AJN) (S.D.N.Y. Oct. 21, 2020) (imposing time-served sentence where bottom of guidelines ranges was 27 months); *United States v. Cirino*, No. 19-cr-323 (JSR) (S.D.N.Y. July 21, 2020) (imposing 10-month sentence where bottom of guidelines range was 57 months); *United States v. Aracena de Jesus*, No. 20-cr-19 (PAE) (S.D.N.Y. July 1, 2020) (imposing time-served sentence where bottom of guidelines range was 30 months).

## IV.   Conclusion

Mr. Weston acknowledges the seriousness of his criminal conduct. His motivation to possess the firearm was to protect himself. Because of his traumatic

history, he is constantly fearful. Considering the circumstances of the offense, Mr. Weston's traumatic history, and the harshness of life in federal custody at this time, a sentence at the guideline minimum of 27 months is warranted.

Thank you for your attention to this matter.

Respectfully submitted,

/s/

Michael K. Schneider, Esq.

cc:   Clerk of the Court (by ECF)
     Mr. Victor Zapana, Assistant U.S. Attorney (by ECF and email)
     Mr. Darren Galerkin, United States Probation Officer (by email)
     Mr. Thomas Weston (by U.S. Mail)